MANDELBAUM BARRETT PC
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
Ph.: 973-736-4600
Fax: 973-736-4670
Vincent J. Roldan
vroldan@mblawfirm.com

*Attorneys for Debtor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In Re:

FLOSS BAR, INC. *et al.*

                          Debtor
-------------------------------------------------------X

Chapter 11

Case No.:  22-11671 (MEW)

## AMENDED PLAN OF LIQUIDATION UNDER SUBCHAPTER V OF CHAPTER 11

Floss Bar, Inc. ("Floss Bar") and Med Bar, LLC ("Med Bar", and collectively with Floss Bar, the "Debtors"), hereby propose the following Plan of Liquidation Under Subchapter V of Chapter 11 (the "Plan").

## BACKGROUND[1]

### A.  Summary of Plan

The following is a brief description and summary of the Plan:

The Plan calls for the wind-down of the Debtors' business and liquidation of their assets over the course of one year after the Effective Date of the Plan.   The Debtors intend to sell their assets, collect their receivables, service their remaining and any profitable new contracts, and make distributions to creditors.  The Debtors believe that through this orderly liquidation, the Debtors' creditors will receive the most value.

---

[1] This Plan is for a small business debtor under Subchapter V of Chapter 11 of the Bankruptcy Code.  Section 1190 of the Bankruptcy Code requires that such a plan include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization."  The information in this section of this Plan is provided for that purpose.

4887-9019-7347, v. 3

Debtors' projections are attached hereto as Exhibit A and incorporated herein by this reference.

## B.  Description and History of the Debtors' Business

Floss Bar was established in 2017 as a mobile logistics business enabling dentists and hygienists to provide dental care at the workplaces of Floss Bar's corporate clients as part of onsite wellness initiatives for their employees.  It generated $540k in 2019 and $370k in 2020.  Unfortunately, the Covid-19 pandemic negatively impacted Floss Bar's operations. Due to the nationwide regulations, many of Floss Bar's existing clients were forced to pause their onsite wellness initiatives in March 2020. In addition, many interested clients did not proceed to execute contracts for future services due to uncertainty surrounding Covid-19 restrictions.  Floss Bar significantly scaled down its operations to all but one client and ultimately has been dormant since August 2022.

Floss Bar formed a subsidiary, Med Bar, in April 2020 to provide Covid-19 testing for employers at their workplace and for patients at their local pharmacies. Med Bar formed a Clinical Laboratory Improvement Amendments (CLIA)-waived laboratory, developed its supply lines, and affiliated with physicians to enable these services. The Covid business line was a temporary strategy to allow for business continuity during the pandemic and to strategically generate new clients for post-pandemic services by helping companies when they needed it most. Floss Bar's post-pandemic plan was to return to its original mobile dental logistics business and to expand Med Bar services beyond Covid-19 testing to include facilitating physical exams, vision screenings, hearing screens, drug testing and other medical services.

Med Bar's Covid-19 business generated $5.6 million in revenue in 2020 and $11.4 million in revenue in 2021.  Unfortunately for Med Bar, despite Covid-19 infection rates across the country at peak levels, in a decision issued Jan. 13, 2022, the United States Supreme Court issued an opinion staying the enforcement of the Occupational Safety and Health Administration (OSHA)'s requirements for COVID-19 vaccination or testing by large employers. This Supreme Court's decision negatively impacted Med Bar's Covid testing business instantly, as corporations were no longer required to provide for Covid testing. Rising rates of vaccination resulted in reduced demand for Covid-19 testing at pharmacies resulting in Med Bar terminating this line of business in April, 2022.

Med Bar's business is reliant upon collections from insurance companies.  However, because many insurers did allow new laboratories to enter their networks early in the pandemic, insurers had materially underpaid for, disregarded, or denied claims for Med Bar's services as an out-of-network laboratory.  Med Bar's collections were also slowed due to significant errors and underperformance of Med Bar's medical billing vendor, Dr. Chono, Inc.  These issues caused severe cash flow problems for the Debtors. Cash expected to fund the post-pandemic plan was at all-time lows and certain vendors threatened to sue for payment.

Based on the foregoing, the Debtors were forced to scale back operations and take various cost cutting measures.  For instance, prior to bankruptcy, the Debtors reduced their salaried staff by over 85% and have sold certain dental equipment and vehicles. The Debtors entered into that certain Purchase and Sale of Future Receivables on or about June 16, 2022 with

Fora Financial Advance, LLC in order to refinance its existing debt (the "<u>Fora Agreement</u>"). As of December 9, 2022, Fora is owed $431,909.84.

Ultimately, the Debtors have determined that it requires the "breathing spell" afforded by the automatic stay provisions of the Bankruptcy Code so that they may wind down its business in an orderly fashion. The Debtors intend to collect their receivables and service their remaining contracts. On the Petition Date, Med Bar had a long-term agreement with the Massachusetts Department of Corrections to provide Covid testing. It netted about $4,000 per week through this contract. On the Petition Date, Med Bar also had a smaller long-term agreement with Jackson Electric Membership Corporation to provide hotline services for Covid-related questions from employees. Med Bar has provided management services to two doctors and expects to collect about $500,000 for these services in 2023. Finally, Med Bar has approximately $500,000 in accounts receivable for clinical laboratory services it rendered, which includes reimbursement claims against certain insurance companies totaling about $350,000 (based on gross charges to insurance carriers). This forecast is after significant write-downs of insurance claims analyzed to be uncollectable.

The Debtors believe that certain assets could be attractive to buyers. They have dental equipment (estimated, and un-appraised, value of about $137,000 owned by Floss Bar); a vehicle (worth about $80,000), trade secrets, software developed in-house, good will, and a large $4.7 million net operating loss.[2] They have a combined debt of about $1.9 million, including the outstanding amount owed to Fora as well as large disputed claims of Talis Biomedical (about $260,000), Greenpoint Rx (about $286,000), and Dr. Chrono (about $129,000).

The Debtors filed voluntary petitions for relief on December 14, 2022 (the "<u>Petition Date</u>").

**Operations While In Bankruptcy**

(i)    <u>Status of contracts</u>

Med Bar's contracts Jackson Electric Membership Corporation has been terminated. Its contract with the Massachusetts Department of Corrections is still active, but that entity has cancelled covid testing for the time being. Med Bar is still providing management services and conducts stand-alone pop-up healthcare services ("inbound sales" services) from time to time.

The Debtors are also working with a new billing company to collect open accounts receivable. It is possible that this new billing company determines that certain accounts receivable have already been paid. The Debtors' projections attached to this Plan account for the possibility that some accounts receivables have already been paid and not accurately recorded by Debtors' previous billing company.

(ii)    <u>Retention of Professionals</u>

---

2 In addition to Med Bar, Floss Bar is the 100% equity owner in two subsidiaries: Floss Bar International, Onsite Service USA Holding, Inc. (Texas) ("Onsite"). Onsite is the 100% equity owner in another subsidiary, Xsite Health, LLC. None of these entities has any assets, liabilities or business operations.

On January 11, 2023, the Court entered an order authorizing the Debtors to retain Mandelbaum Barrett PC as counsel, nunc pro tunc to the Petition Date.

(iii)     Motion to reject License Agreement/ Settlement with Landlord

On March 4, 2022, Floss Bar entered into that certain License Agreement ("License Agreement") with 40 Wall Street Suites LLC ("Licensor") for the use of office space located at 40 Wall Street, New York NY 10005 Suite 2934 (the "Office Space").  On January 18, 2023, the Court entered an order authorizing Floss Bar to reject the License Agreement.

On February 17, 2023, Floss Bar filed a motion to approve a settlement agreement with Licensor.  This motion is scheduled for hearing on March 7, 2023.

(iv)     Claims Bar Date

On February 14, 2023, the Court entered an order establishing March 31, 2023 as the general claims bar date and June 12, 2023 as the deadline for government units to file claims. The Debtors served notice of this order on February 17, 2023.

(v)     Miscellaneous

The following additional events occurred during these bankruptcy cases:

a.     On January 11, 2023, the United States Trustee conducted its initial debtor interview of the Debtors.

b.     On January 18, 2023, the Debtors filed their statements of financial affairs [Dockets 25, 26]. Their bankruptcy schedules are attached to their bankruptcy petitions.

c.     On January 19, 2023, the United States Trustee conducted a meeting of creditors under section 341 of the Bankruptcy Code.

d.     On January 24, 2023, the Debtors filed their statement under section 1188(c) of the Bankruptcy Code.

(vi)     Regulatory inquiries.

From time to time the Debtors received inquiries from certain regulatory agencies.  The Debtors duly responded to these inquiries.

**C.  Liquidation Analysis**

Attached as Exhibit B is Debtor's liquidation analysis, including a discussion of the so-called "best interests of creditors test" under 11 U.S.C. § 1129(a)(7). One of the requirements of confirming a plan under 11 U.S.C. § 1191 is that the plan must satisfy the requirements of 11 U.S.C. § 1129(a)(7). Specifically, each impaired class must either (a) accept the Plan, or (b)

receive or retain property of a value, as of the Effective Date of the Plan, "that is not less than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7 [of the Bankruptcy Code] on such date." Debtor believes the Plan meets this test.

The Liquidation Analysis is an estimate of the total liquidation proceeds that may be available for distribution if Debtors' assets were liquidated by a Chapter 7 bankruptcy trustee. The Debtors believe that if this case was converted to Chapter 7, there would be increased costs including the compensation of a Chapter 7 trustee, as well as the costs of counsel and other professionals retained by the trustee.

Furthermore, the Debtors submit that the Chapter 7 Trustee would need to retain a billing company to collect the Debtors' accounts receivable, just the same as the Debtors intend to do. Under the Debtors' plan, however, the Debtors will be able to maximize the value of the accounts receivable in a way that a Chapter 7 trustee would not, because the Debtors have knowledge and experience pertinent to the claims and relationships with the patients and insurance companies.

As set forth in the Liquidation Analysis, this Plan is in the best interest of creditors, as creditors are likely to received more under this Plan than they would in a Chapter 7 bankruptcy. The Debtors believe there would be no distribution to unsecured creditors in a Chapter 7; in contrast, the Debtors' projections project a distribution to unsecured creditors on the twelfth month following the Effective Date.

### D. Feasibility

Another requirement of confirming a plan under 11 U.S.C. § 1191 is that the Plan must satisfy the requirements of 11 U.S.C. § 1129(a)(11), which is sometimes referred to as the "feasibility" requirement. Specifically, the Debtors must show that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtors or any successor to Debtors under the plan, unless such liquidation or reorganization is proposed in the Plan. Here, the Plan does not contemplate that Debtors will continue in business. Rather, the Plan contemplates that Debtors' business will be wound down and their assets will be liquidated, collected, and distributed to the holders of Allowed Claims. In short, liquidation of Debtors is already proposed in the Plan. Additionally, as noted above, Debtor's twelve (12) month wind-down projections are attached hereto as Exhibit A ("Projections"). The Projections demonstrate the ability of the Debtors to pay all administrative and priority creditors within twelve months. The Projections anticipate the Debtors will liquidate their equipment and their intellectual property within three months, or shortly thereafter. The Debtors have begun the marketing process by speaking with two well known liquidators. The Debtors will review their proposals and will retain the liquidator who provides the most beneficial terms.

### ARTICLE I

### SUMMARY

As set forth in the summary above, the Debtors intend to wind down their business and liquidate their assets over the course of twelve (12) months. The Plan does not provide for the

substantive consolidation of the Debtors' estates; instead, each Debtor will be responsible for payment only of claims against that particular Debtor.

The Plan provides for classes of claims for secured creditors, non-tax priority creditors, and unsecured creditors. The Plan also provide for separate classification among Floss Bar's creditors and Med Bar's creditors.

The Plan provides for the full payment of administrative and priority claims in accordance with the Bankruptcy Code. The Debtors including secured creditors (1(a), 1(b), 1(c), and 1(d)) and priority creditors (class 2(a), 2(b)) will be paid in full. The Debtors' unsecured creditors will share in the recovery after the senior creditors are paid in full.

All creditors should refer to Articles III through VI of the Plan for information regarding the precise treatment of their claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTEREST

2.01    <u>Class 1(a)(i) Claim</u> – Fora Financial Advance, LLC

Class 1(a)(i) consists of the Allowed secured claim of Fora Financial Advance, LLC against Floss Bar.

<u>Class 1(a)(ii) Claim</u>- Fora Financial Advance, LLC

Class 1(a)(ii) consists of the Allowed secured claim of Fora Financial Advance LLC against Med Bar.

2.02    <u>Class 1(b) Claim</u> – Berkshire secured claims

Class 1(b) consists of the secured claims of Huntington against Floss Bar.

2.03    <u>Class 1(c) Claim</u> – Misc. Floss Bar secured claims

Class 1(c) consists of miscellaneous Allowed secured claims against Floss Bar.

2.04    <u>Class 1(d) Claim</u> – Misc. Med Bar secured claims

Class 1(d) consists of miscellaneous Allowed secured claims of against Med Bar.

2.05    <u>Class 2(a) Claims</u> – Floss Bar priority non-tax claims

Class 2(a) consists of Allowed priority non-tax claims against Floss Bar.

4887-9019-7347, v. 3

2.06    <u>Class 2(b) Claims</u> – Med Bar priority non-tax claims

Class 2(b) consists of Allowed priority non-tax claims against Med Bar.

2.07    <u>Class 3(a) Claims</u> – Floss Bar general unsecured claims

Class 3(a) consists of Allowed general unsecured claims against Floss Bar.

2.08    <u>Class 3(b) Claims</u> – Med Bar general unsecured claims

Class 3(b) consists of Allowed general unsecured claims against Med Bar.

2.09    <u>Class 4(a) Interests</u> – Floss Bar equity interests

Class 4(a) consists of Allowed equity interests of Floss Bar.

2.10    <u>Class 4(b) Interests</u> – Med Bar membership interests

Class 4(b) consists of Allowed membership interests of Med Bar.


# ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, <br> <u>PRIORITY TAX CLAIMS AND COURT FEES</u>

3.01    *Unclassified Claims* – Pursuant to § 1123 of the Bankruptcy Code, statutory fees, administrative expense claims and priority tax claims are not classified.

3.02    *Administrative Expense Claims* - Each holder of an administrative expense claim Allowed under § 503 of the Bankruptcy Code will be paid in cash on the Effective Date of this Plan, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Administrative fees of professionals are subject to Court application and approval (and continue to accrue).    Unpaid professional fee claims are estimated to be as follows:

| Name | Title | Amount |
|---|---|---|
| Mandelbaum Barrett PC | Counsel to the Debtors | $50,000 (estimated) |
| Ronald Friedman | Sub-Chapter V Trustee | $7,500 (estimated) |

3.03    *Priority Tax Claims* – holders of priority tax claims against Floss Bar and Med Bar, allowed under § 507(a)(8) of the Bankruptcy Code, will be paid, in accordance with Section

4887-9019-7347, v. 3

1129(a)(9)(C) of the Bankruptcy Code, in full within one year of the Effective Date of the Plan. The bar date for governmental entities has not yet passed. Based upon the Debtor's schedules, Floss Bar has approximately $23,790.95 and Med Bar has $1,165.00 in unpaid prepetition tax claims.

A review of filed claims reveals that Floss Bar may be subject to about $250,000 in tax claims and Med Bar may be subject to about $71,000 in tax claims. But these amounts include two large claims filed by the City of New York Department of Finance, who filed a claim of $171,261 against Floss Bar (claim 15) and a claim of $68,241 against Med Bar (claim 5). Floss Bar and Med Bar believe these claims are subject to objection and will ultimately be reduced significantly. Similarly, Floss Bar and Med Bar shall investigate all filed tax claims and reserves the right to raise objections.

3.04   *Statutory Fees* – Under a traditional Chapter 11 plan, all fees and charges required to paid under 28 U.S.C. § 1930, including any applicable interest, shall be fully paid. Because this case was filed as a Subchapter V case, the Debtors expect there to be no statutory fees.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01   On February 14, 2023, the Court entered an order setting March 31, 2023, as the deadline to file proofs of claim. The Debtors reserve the right to object to any claims. For purposes of disclosure, Allowed claims and interests shall be treated as follows under the Plan:

| Class | Impairment | Amount[3] | Treatment |
|---|---|---|---|
| Class 1(a)(i) – Fora claims against Floss Bar | Impaired | $431,909.84 | Class 1(a)(i) consists of the Allowed secured claim of Fora against Floss Bar. Upon the Effective Date of the Plan, the Class 1(a)(i) claimant will be paid, each month, 85% of collections of receivables after payment of the Debtors' operating expenses as set forth in the Projections until its Class 1(a)(i) Allowed secured claims are paid in full, with any amounts Fora receives on account of its Class 1(a)(ii) secured claims being credited towards satisfaction of Fora's Allowed secured claim. The Class 1(a)(i) claimant's interests in the Debtor's receivables are retained. To the extent Class 1(a)(i) has a deficiency, that deficiency is |

---

[3] The foregoing amounts are estimates based upon the Debtors' schedules. These amounts are subject to the claim ultimately being Allowed.

8

| Class | Impairment | Amount[3] | Treatment |
|---|---|---|---|
| | | | treated as a Class 3(a) unsecured claim. |
| | | | The Class 1(a)(i) Claim is impaired, and therefore the holder of the Class 1(a)(i) Claim is entitled to vote to accept or reject the Plan. |
| Class 1(a)(ii) – Fora claims against Med Bar | Impaired | $431,909.84 | Class 1(a)(ii) consists of the Allowed secured claim of Fora against Floss Bar.    Upon the Effective Date of the Plan, the Class 1(a)(ii) claimant will be paid, each month, 85% of collections of receivables after payment of the Debtors' operating expenses as set forth in the Projections until its Class 1(a)(ii) Allowed secured claims are paid in full, with any amounts Fora receives on account of its Class 1(a)(i) secured claims being credited towards satisfaction of Fora's Allowed secured claim. The Class 1(a)(ii) claimant's interests in the Debtor's receivables are retained.   To the extent Class 1(a)(ii) has a deficiency, that deficiency is treated as a Class 3(b) unsecured claim. |
| | | | The Class 1(a)(ii) Claim is impaired, and therefore the holder of the Class 1(a)(ii) Claim is entitled to vote to accept or reject the Plan. |
| Class 1(b) – Huntington claims | Impaired | $30,000 | Class 1(b) consists of the Allowed Secured Claim of Huntington.  This creditor's collateral will be sold and the proceeds delivered to the creditor.  Any deficiency claim will be treated as a Class 3(a) unsecured claim.  The Class 1(b) claimant shall retain its lien. |
| | | | The Class 1(b) Claim is impaired, and therefore the holder of the Class 1(b) Claim is entitled to vote to accept or reject the Plan. |
| Class 1(c) – Miscellaneous secured claims against Floss Bar. | Unimpaired | n/a | Class 1(c) consists of the Allowed Secured Claim of miscellaneous secured creditors of Floss Bar.  These claims will be reinstated and paid according to their terms or the collateral will be returned. |
| | | | This is a placeholder class. Floss Bar does not believe there are any creditors in this class. |
| | | | The Class 1(c) Claim is unimpaired, and therefore the holder of the Class 1(c) Claim is not entitled to vote to accept or reject the Plan. |
| Class 1(d) – | Unimpaired | n/a | Class 1(d) consists of the Allowed Secured |

4887-9019-7347, v. 3

| Class | Impairment | Amount[3] | Treatment |
|---|---|---|---|
| Miscellaneous secured claims against Med Bar. | | | Claim of miscellaneous secured creditors of Floss Bar.  These claims will be reinstated and paid according to their terms or the collateral will be returned.<br><br>This is a placeholder class. Med Bar does not believe there are any creditors in this class.<br><br>The Class 1(d) Claim is unimpaired, and therefore the holder of the Class 1(e) Claim is not entitled to vote to accept or reject the Plan. |
| Class 2(a) – Priority Claims (Wages, Commissions, related) against Floss Bar | Impaired | $0.00 | Class 2(a) consists of the Allowed Priority (Non-Tax) Claims against Floss Bar.  Upon the Effective Date of the Plan, in full satisfaction of its Allowed Priority Claim, each holder of an Allowed Priority Claim will be paid in full in within twelve (12) months, except as otherwise agreed.<br><br>The Debtors believe there are no creditors in this class.<br><br>Class 2(a) Claims are impaired, and therefore holders of Class 2(a) Claims are entitled to vote to accept or reject the Plan. |
| Class 2(b) – Priority Claims (Wages, Commissions, related) against Med Bar | Impaired | $0.00 | Class 2(b) consists of the Allowed Priority (Non-Tax) Claims against Med Bar.  Upon the Effective Date of the Plan, in full satisfaction of its Allowed Priority Claim, each holder of an Allowed Priority Claim will be paid in full within twelve (12) months, except as otherwise agreed.<br><br>The Debtors believe there are no creditors in this class.<br><br>Class 2(b) Claims are impaired, and therefore holders of Class 2(b) Claims are entitled to vote to accept or reject the Plan. |

10

| Class | Impairment | Amount[3] | Treatment |
|---|---|---|---|
| Class 3(a)– General Unsecured Claims against Floss Bar | Impaired | $94,227.24 plus deficiency claims of Class 1(b) creditor | Class 3(a) consists of the Allowed General Unsecured Claims against Floss Bar (including deficiency claims of Class 1(b) creditors). Upon the Effective Date of the Plan, the Debtors shall market and sell Floss Bar's assets. The Debtors will distribute the proceeds to pro rata to Class 3(a) creditors after senior creditors (administrative and priority creditors, Class 1(a), (b), (c), (d) and Class 2(a) and (b)) are paid in full.<br><br>Class 3(a) Claims are impaired, and therefore holders of Class 3(a) Claims are entitled to vote to accept or reject the Plan. |
| Class 3(b)– General Unsecured Claims against Med Bar | Impaired | $1,301,158.00 (based on Med Bar's schedules. Subject to Debtors' right to object to claims) | Class 3(b) consists of the Allowed General Unsecured Claims against Med Bar (including deficiency claims of Class 1(b) creditors). Upon the the twelve (12) month anniversary of the Effective Date of the Plan, in full satisfaction of its Allowed General Unsecured Claim, the Debtors will distribute their assets pro rata to Class 3(b) creditors after senior creditors (Class 1(a), (b), (c), (d) and Class 2(a) and (b)) are paid in full.<br><br>The Debtors project these creditors will share their pro rata share of $31,456, about a 2.3% dividend based upon scheduled claims.<br><br>Class 3(b) Claims are impaired, and therefore holders of Class 3(b) Claims are entitled to vote to accept or reject the Plan. |
| Class 4(a) – Interests in Floss Bar | Unimpaired | N/A | Upon the Effective Date of the Plan, the holder of the Interests of Floss Bar shall retain such Interests. Class 4(a) Interests are unimpaired, and therefore holders of Class 4(a) are deemed to have voted to accept the Plan. |
| Class 4(b) – Interests in Med Bar | Unimpaired | N/A | Upon the Effective Date of the Plan, the holder of the Interests of Med Bar shall retain such Interests. Class 4(b) Interests are unimpaired, and therefore holders of Class 4(b) are deemed to have voted to accept the Plan. |

4887-9019-7347, v. 3

# ARTICLE V

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    *Objections to Claims*.  The Debtors may continue to prosecute any objection to any claim filed prior to confirmation of the Plan after the Effective Date.  Any Claim subject to an objection which has not been adjudicated by Final Order or otherwise resolved prior to Confirmation will be treated as a Disputed Claim under the Plan.  Any further objections to Claims shall be filed by the Debtors no later than one hundred and twenty (120) days after the Effective Date, which deadline may be extended by the Court upon application or motion of the Debtor without notice filed prior to the deadline.  In the event that any proof of claim is filed, asserted or amended after the Effective Date, the Debtors shall have one hundred twenty (120) days from the date of such filing or notice to object to such claim, which deadline may be extended by the Court upon application or motion of the Debtors without notice filed prior to the deadline.  All objections shall be litigated (or settled) to Final Order.  The Bankruptcy Court shall retain jurisdiction to adjudicate any and all objections to claims whether filed prior to or after the Effective Date.

5.02    *Disputed Claim Reserve*. No distribution will be made on account of a Disputed Claim unless such Claim is Allowed. On any date that distributions are to be made under the terms of this Plan, the Disbursing Agent shall deposit in one or more accounts (either an attorney escrow account or a segregated account with a banking institution that is a depository authorized by the United States Trustee for bankruptcy cases in the Southern District of New York), cash equal to 100% of the cash that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as administrative expenses or as priority claims pursuant to §§ 503 and 507 of the Bankruptcy Code, (ii) claims of governmental units for any tax and (iii) any amount due but not payable on the Effective Date on account of administrative expenses or claims entitled to priority pursuant to §§ 503 and 507 of the Bankruptcy Code. The Disbursing Agent shall also segregate any interest, dividends or proceeds of such cash. Such cash together with any interest, dividends or proceeds thereof, be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.  Within fourteen (14) days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all cash, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

4887-9019-7347, v. 3

## ARTICLE VI

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Except as set forth in this Plan, all executory contracts or unexpired leases to which the Debtors are a party as of the Effective Date which were not previously rejected, assumed, or assumed and assigned by the Debtors shall be deemed rejected under the Plan as of the Effective Date in accordance with the provisions and requirements of §§ 365 and 1123 of the Bankruptcy Code.

6.02    *Claims Based on Rejection of Executory Contracts or Unexpired Leases*. All proofs of claim with respect to any Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court within thirty (30) days after the date of the order confirming this Plan.  The failure of any such counterparty to file a proof of claim within the period proscribed shall forever bar it from asserting against the Debtors or their estates any claim for damages arising from the rejection of its executory contract or unexpired lease with the Debtors.  The filing of any such proof of claim shall be without prejudice to any and all rights that the Debtors may have to object to the allowance thereof on any and all available grounds.

## ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    *Vesting of Property*.  Except as otherwise provided in this Plan, the Reorganized Debtors, as of the Effective Date, shall be vested with all of the assets of their respective estates.

7.02    *Avoidance Actions and Other Litigations*. The Debtors will review and examine potential preference and other litigation claims against third parties in this case. Avoidance claims under Section 544, 547, 548 and 550 of the Bankruptcy Code  as well as causes of action against third parties will be reviewed by the Debtors (including but not limited to litigations that existed as of the Petition Date such as that certain litigation *Floss Bar Inc. vs, Joshua David Perry* filed in the Supreme Court State of New York dated September 28, 2020 and counterclaims referenced in the Debtors' bankruptcy schedules), and pursued in the exercise of the Debtors' business judgment, which are beneficial to the applicable Debtors' estate.

The Debtors have not evaluated the potential recoveries with respect to these litigations. Any and all litigation recoveries received by the Debtors, net of professional fees and costs, will be distributed in accordance with the Projections and in accordance with Articles III and IV above, and the claim priorities under the Bankruptcy Code and lien priorities under applicable non-bankruptcy law.

7.03    *Wind down and liquidation.* Floss Bar does not anticipate engaging in any ongoing business operations after the Effective Date.  Med Bar will perform under its existing contracts, provide "inbound sales" services from time to time, and will wind down its business. The Debtors' business operations are anticipated to be limited to liquidating their assets,

collecting Debtor's assets, making distributions, and otherwise winding up Debtors' financial and business affairs. For the purposes of windup and liquidation, the Reorganized Debtors are authorized to continue normal business operations and enter into such transactions as they deem advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan.

7.04   *Asset sales.* (a) The Reorganized Debtors shall use conduct an orderly liquidation of their property and assets without court order, as they deem reasonable and likely to maximize their value.  The assets to be sold by the Debtors are set forth in their bankruptcy schedules and include: equipment, supplies, Floss Bar's vehicle, and the Debtors' intellectual property.  As set forth in the Projections, the Debtors anticipate selling these assets over the course of three months after the Plan is confirmed.  The Debtors project these sales to generate about $160,000 in proceeds.  Any miscellaneous equipment or supplies still unsold after the marketing and attempted sale of same shall be abandoned.

(b) Sale Price: The Reorganized Debtors shall market and sell their property and assets for their full market value, or on such other price terms as they deem reasonable and prudent given the age, condition, development status, wear and tear, price of competing products, etc. of their assets.

(c) Brokers.   Without notice, opportunity for hearing or order of the Court, the Reorganized Debtors shall retain brokers, finders, auctioneers and other persons specializing in the marketing or sale of assets on terms they deem appropriate.

(d) Sales free and clear

(i)   Sales Shall Be Free and Clear without Entry of a Sale Order. All sales by the Reorganized Debtors shall, pursuant to the Order confirming this Plan, expressly be free and clear of liens, claims, interests, and encumbrances pursuant to 11 U.S.C. §§ 363(f) and 1123(a)(5)(D), with any applicable Liens, claims, interests, and encumbrances to attach to the Cash proceeds of the sale. No notice, hearing or further order shall be necessary for such sales to be free and clear with the protection of sections 363(f) and 1123(a)(5)(D) of the Bankruptcy Code.

(ii)   Sale Order on Shortened Notice. Nevertheless, the Reorganized Debtors may obtain an order on shortened notice expressly providing that the sale of any particular property is free and clear pursuant to 11 U.S.C. §§ 363(f) and 1123(a)(5)(D).

(e)   Relief Under Section 506(c). Without the need for notice, hearing or Order, the Reorganized Debtors shall be authorized and entitled to recover from the proceeds of sale and to pay at closing the actual closing costs, broker's commissions (up to six percent of the gross sales price) and other ordinary and reasonable expenses incurred by the Reorganized Debtors in connection with marketing an asset for sale and closing the sale ("Costs of Sale").

4887-9019-7347, v. 3

(f)    Satisfaction of Liens upon Sales of Collateral. If the Reorganized Debtors sell property or assets that are subject to a valid lien, then the Reorganized Debtors may pay or satisfy the lien immediately from the proceeds of the sale without notice, opportunity for hearing or order of the Court. Alternatively, the Reorganized Debtors may deliver the proceeds to the Subchapter V Trustee, for distribution by the Subchapter V Trustee.

7.05    *Employment of Professionals*. The Reorganized Debtors may employ attorneys, accountants, or other professionals as they may deem appropriate and pay such professionals' reasonable fees and expenses. Professionals employed by the Reorganized Debtors after the Effective Date shall not be subject to Bankruptcy Court approval, their compensation shall not be subject to Bankruptcy Court approval, and their employment shall not be subject to the disinterestedness requirements of the Bankruptcy Code.

7.06    *Distributions*

a.    In General. Subject to Bankruptcy Rule 9010, all distributions under the Plan to be made by the Disbursing Agent to the holder of each Allowed Claim shall be mailed by first-class mail, postage prepaid, to the address of such holder as listed on the Schedules as of the Effective Date, unless the Disbursing Agent has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules. The Disbursing Agent shall make reasonable efforts to locate holders whose distributions or notices are properly mailed but returned.

b.    Form of Distributions. Any payment of Cash made by the Disbursing Agent pursuant to the Plan shall be made by regular check, ACH or wire transfer.

c.    Distributions to be on Business Days. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be initiated/mailed on the next succeeding Business Day.

d.    Withholding Taxes on Distributions. The Disbursing Agent shall withhold from any Cash or property distributed under the Plan such amounts as Debtors are obligated under non-bankruptcy law to withhold and transmit to taxing authorities.

e.    Minimum Distributions. The Disbursing Agent shall not be obligated to make any distribution, including a final distribution, unless the payment exceeds fifty dollars ($50). To the extent the entire amount distributable to the holder of a claim is not at least $50, the Disbursing Agent may retain the funds otherwise distributable to such holder and may use such funds for the benefit of the Reorganized Debtor's other creditors and Class 4(a) and 4(b) interest holders.

4887-9019-7347, v. 3

    f.   <u>Estimated recovery for Creditors</u>.  As set forth in the Projections, unsecured creditors are to receive their pro rata share of The Debtors project these creditors will share their pro rata share of $31,456, about a 2.3% dividend based upon scheduled claims. The ultimate dividend to unsecured creditors will be based on a number of variable factors, including but not limited to (i) the pool of claims for payment by applicable health insurance carriers that are ultimately "Allowed"[4], (ii) the Debtors' ability to recover their accounts receivable through cost-effective means and by way of their medical billing company(ies),[5] (iii) the amount the Debtors are able to recover through the sale of their assets, prosecution of litigations, or otherwise,[6] and (iv) the extent of additional work including "inbound sales" services performed by the Debtors.[7]

    7.07   *Exemption from Taxes*

       To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan as confirmed by the Court, (including any instrument of transfer executed in furtherance of the sale of the Policy as contemplated by the Plan), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax due on the sale or transfer of the property in connection with or in furtherance of the Plan as confirmed by the Court and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE VIII

## **GENERAL PROVISIONS**

    8.01   *Definitions and Rules of Construction.*  The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

       (i)   "Allowed" or "Allowed Claim" means any Claim or Interest against the Debtors that is scheduled by or on behalf of the Debtors as not disputed, contingent or unliquidated, or proof or request for payment of which has been filed timely with the Bankruptcy

---

[4] The Projections reflect that these receivables are valued at $450,000 as of May 2023 and mostly collected by June 2024.

[5] The Projections reflect that these receivables are valued at $900,000 as of May 2023 and mostly collected by June 2024.

[6] The Projections project $160,000 in proceeds from the sale of assets by the end of July 2023 and $185,000 in litigation recoveries by April 2024.

[7] The Projections project $15,000 in "inbound sales" through the end of 2023.

4887-9019-7347, v. 3

Court and, in either case, a Claim (a) as to which no objection has been interposed within one hundred twenty (120) days after the Effective Date or (b) as to which an objection has been interposed and such Claim has been allowed by a Final Order of the Bankruptcy Court.

(ii)    "Bankruptcy Code" means title 11 of the United States Code (11 U. S.C. §§ 1101, *et seq.*).

(iii)    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as in effect on the Filing Date and as amended after the Filing Date and during the Debtor's chapter 11 case.

(iv)    "Claim" means any right to payment from the Debtors arising, or with respect to which the obligation giving rise to such right has been incurred, before the Effective Date of this Plan, and based upon, concerning, relating to, or din any manner arising from, in whole or in part, the Debtors and/or the Debtor's operations, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance arising, or with respect to which the obligation giving rise to such right has been incurred, before the Effective Date, if such breach gives rise to a right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. FOR THE AVOIDANCE OF DOUBT, "CLAIM" SHALL SPECIFICALLY AND EXPRESSLY INCLUDE ALL CLAIMS UNDER FEDERAL, STATE AND/OR LOCAL LAW OR REGULATION.

(v)    "Disputed Claim" means (a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; and (b) any Claim, or portion thereof, that has not been disallowed and with respect to which an objection or action concerning the allowance and/or extent thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection or action has not been resolved by a Final Order.

(vi)    "Debtor's Professionals" or "Professionals" means such attorneys, accountants and/or other professionals employed by the Debtors in connection with this case.

(vii)    "Disbursing Agent" for creditors of Floss Bar and Med Bar are as follows: Floss Bar shall be the Disbursing Agent for distributions to creditors of Floss Bar, and Med Bar shall be the Disbursing Agent for distributions to creditors of Med Bar.

(viii)    "Effective Date" means the first business day following the date that the Conditions to Effective Date set forth in section 8.15 herein are satisfied. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

(ix)    "Final Order" means an order of a court as to which (a) any appeal that has been taken has been determined finally or dismissed or (b) the time for appeal has expired and (i) no timely appeal has been filed and (ii) no order having the effect of tolling or otherwise extending the appeal period is in effect.

(x)    "Pro Rata Distribution(s)" means, with respect to any Allowed Claim, the proportions that such Allowed Claim bears to the aggregate amount of all claims in such class.

(vii)    "Reorganized Debtor" means the applicable Debtor in its post-Confirmation Order state.

8.02    *Authority to Effectuate Plan*.  Upon the Confirmation Order becoming a Final Order, all matters provided under the Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court or the Debtor.  The Debtors shall be authorized, without further application to or order of the Bankruptcy Court to take whatever action necessary to achieve consummation and carry out the Plan and to effectuate the transactions provided for thereunder.

8.03    *Revesting of Assets*.    Consistent with §§ 1123(a)(5)(A) and 1141 of the Bankruptcy Code, and except as may be otherwise provided in this Plan, title to all assets and property of the estates of the Debtors shall pass to, and vest in, the respective Reorganized Debtor.  On and after the Effective Date, the Reorganized Debtors may conduct their financial affairs and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court, except as otherwise provided in this Plan or in the Confirmation Order.  Any distribution check that is issued by the Reorganized Debtors but not deposited within one hundred twenty (120) days after its distribution will be deemed abandoned by such creditor and shall pass to and revert in the Reorganized Debtors free and clear of any claims to the distribution.

8.04    *Retention of Jurisdiction.* Following the Effective Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under the Plan have been made and performed and the Final Decree has been entered closing the Chapter 11 Case, the Bankruptcy Court shall retain jurisdiction over this proceeding under the provisions of the Bankruptcy Code, including, without limitation, § 1142(b) thereof and the Bankruptcy Rules, to ensure that the intent and the purpose of the Plan is carried out and given effect.  Without limitation by reason of specification, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a)    To consider any modification of the Plan pursuant to § 1127 of the Bankruptcy Code and/or any other modification of the Plan after substantial consummation thereof;

(b)    To hear and determine:

4887-9019-7347, v. 3

(i)      all controversies, suits and disputes, if any, as may arise in connection with the interpretation, implementation, consummation or enforcement of the Plan;

(ii)     all controversies, suits and disputes, if any, as may arise between or among the holders of any Class of Claim and the Debtors including, without limitation, proceedings to determine the allowance, classification, amount, or priority of Claims;

(iii)    all rights or Causes of Action which may exist on behalf of the estate, including actions commenced to recover preferential transfers, accounts receivable and other property of the estate;

(iv)     applications for allowance of compensation and expense reimbursement of the Debtor's Professionals, and the Subchapter V Trustee, for periods prior to the Effective Date;

(v)      any and all applications, adversary proceedings and litigated matters;

(vi)     to enter a final decree closing the Chapter 11 Case; and

(vii)    to the extent not expressly provided for above, any and all disputes arising under the Plan and proceedings in aid of the administration and/or consummation of the Plan.

8.05    *Headings*. Headings are used in the Plan for convenience of reference only and shall not constitute a part of the Plan for any other purpose.

8.06    *Revocation*. The Debtors shall have the right to revoke or withdraw the Plan at any time prior to the Effective Date. If the Plan is revoked or withdrawn, it shall be deemed null and void, and in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor, or any other entity, or to prejudice in any manner, the rights of the Debtors or any entity in any further proceeding involving the Debtor.

8.07    *Successors and Assigns*. The rights, benefits and obligations named or referred to in the Plan shall be binding on, and shall inure to the benefit of the Debtors and all holders of Claims and Interests, their respective successors and assigns. The provisions of all documents executed under or in connection with this Plan shall be valid and enforceable and binding upon and inure to the benefit of the Debtors and all other parties thereto and their respective predecessors, successors, assigns, agents, officers and directors.

8.08    *Governing Law*. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of New York shall govern the construction and implementation of the Plan and, unless otherwise stated therein, any agreements, documents, and instruments executed in connection with the Plan.

8.09    *Saturday, Sunday or Legal Holiday*.  If any payment or act under the Plan is required to be made or performed on a date that is not a business day, then the making of such payment or the performance of such act may be completed on the next succeeding business day, but shall be deemed to have been completed as of the required date.

8.10    *Enforceability*.  Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

8.11    *Plan Controls*. To the extent, the Plan is inconsistent with the Order confirming the Plan, the provisions of the Order shall be controlling.

8.12    *Reservation of Rights*.  Neither the filing of the Plan nor any statement or provision contained therein shall be or be deemed to be an admission against interest.  In the event that the Effective Date shall not occur, neither the Plan nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or outside of the Chapter 11 Case.

8.13    *Substantial Consummation*.  The Plan will be deemed substantially consummated, as such terms is used in § 1101(2) of the Bankruptcy Code, upon the commencement of distributions to the holder of any Class of Claims under the Plan.  Following such substantial consummation, any appeal, rehearing or other post-confirmation motion of any nature with respect to the Plan or the Confirmation Order except as specifically provided herein or therein shall be rendered moot and no longer justiciable.  The Debtors shall file and serve a notice of substantial consummation in accordance with section 1183(c)(2) of the Bankruptcy Code.

8.14    *Final Decree*.  The Debtors will file, on notice to the United States Trustee, an application and proposed order for a final decree pursuant to Bankruptcy Rule 3022, without prejudice to the Court's ability to reduce or extend the time to file such application.

8.15    *Conditions to Effective Date:*  The following are conditions to the Effective Date:

(a)    the Bankruptcy Court shall have entered a Final Order confirming the Plan.

## ARTICLE IX

## DISCHARGE; LIMITATION OF LIABILITY

9.01    *Discharge*.  (a) If this Plan is confirmed under § 1191(a) of the Bankruptcy Code, on the Effective Date of the Plan, the Debtors will be discharged from any debt and/or Claim that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtors will not be discharged of any debt:

(i)    imposed by this Plan; or

(ii)    to the extent provided in § 1141(d)(6).

20

9.02    If this Plan is confirmed under § 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code.  The Debtors will not be discharged of any debt:

(i)    on which the last payment is due after the first three (3) years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code; or

(ii)    excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

9.03    *Continuation of Stays*.  All stays provided for in the Chapter 11 Case under § 362 of the Bankruptcy Code, or otherwise, and in existence on the Effective Date, shall remain in full force and effect until the completion of all payments required under the Plan.

9.04    *Injunction.*  Effective on the Effective Date, all creditors who have held, hold, or may hold Claims against the Debtors or their assets are enjoined from taking any of the following actions against or affecting the Debtors or the assets of the Debtors with respect to such Claims (other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtors or the assets of the Debtor; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Debtors or their assets; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or the assets of the Debtor; (iv) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against any obligation due the Debtors or its assets; and (v) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

9.05    *Limitation of Liability*.  The Debtors and their Professionals shall have or incur no liability to the extent allowed under § 1125(e) of the Bankruptcy Code and, in all respects, the Debtors and its Professionals shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing in the Plan shall limit the liability of the Professionals of the Debtors for malpractice to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. Title 22, Section 1200.0, Rule 1.8(h)(1) nor release any party for any claims of fraud, *ultra vires* acts, gross mismanagement, or willful misconduct,  Additionally, the Plan shall not release or exculpate any person or entity from any Claim or Cause of Action existing as of the Effective Date (i) based on the Internal Revenue Code or other domestic state, city or municipal tax code; (ii) based on the environmental laws of the United States or any domestic state, city or municipality; (iii) based on any criminal laws of the United States or any domestic state, city or municipality; (iv) based on the Securities Exchange Act of 1934, as now in effect or hereafter amended, the Securities Act of 1933, as now in effect or hereafter amended, or other securities laws of the United States or any domestic state, city, or municipality.

4887-9019-7347, v. 3

## ARTICLE X

## <u>CONFIRMATION REQUEST</u>

10.01  The Debtors hereby request Confirmation of the Plan pursuant to §§ 1129 and 1191 of the Bankruptcy Code.

Dated:  June 20, 2023

Respectfully submitted,

FLOSS BAR, INC.

By:      _____*/s/ Ewa Sadej*_____
Ewa Sadej

MED BAR, LLC

By:      _____*/s/ Ewa Sadej*_____
Ewa Sadej

## **Exhibit A**

Projections

4887-9019-7347, v. 3

## **Exhibit B**

Liquidation Analysis

4887-9019-7347, v. 3